NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____

| | | |
|---|---|---|
| SHAWN WOODWARD, | : | |
| | : | Civ. No. 22-3812 (RMB-SAK) |
| Plaintiff. | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| CHRISTINA AHEARN, et al., | : | |
| | : | |
| Defendants. | : | |

_____ :

RENÉE MARIE BUMB, United States District Judge

Plaintiff Shawn Woodward, previously confined in Mid-State Correctional Facility ("MSCF") in Wrightstown, New Jersey and South Woods State Prison ("SWSP") in Bridgeton, New Jersey, filed this civil suit under 42 U.S.C. § 1983 against twenty defendants, alleging Fourteenth Amendment due process claims regarding his parole revocation hearing, First Amendment free exercise of religion claims, First Amendment retaliation claims, an Eighth Amendment inadequate medical care claim, and Fourteenth Amendment discrimination claims. Plaintiff submitted an IFP application (IFP App., Docket Nos. 4, 5) that establishes his financial eligibility to proceed without prepayment of the filing fee, and it will be granted. For the reasons, discussed below, the claims against improperly joined

defendants will be severed and opened in new civil actions, and Plaintiff's claims are dismissed in part and may proceed in part.

## I.      *SUA SPONTE* DISMISSAL

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and *sua sponte* dismiss any claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See, Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)  This Court will screen the complaint and will then consider, pursuant to Federal Rule of Civil Procedure 21, whether the claims and defendants are properly joined under Federal Rules of Civil Procedure 18 and 20.

## II.    REVIEW OF CLAIMS IN THE COMPLAINT

Plaintiff asserts jurisdiction under 42 U.S.C. § 1983.  The defendants named in the complaint are the New Jersey State Parole Board ("NJSPB"); Steven Tallard, Executive Director, NJSPB; Christina Ahearn, head of classification at MSCF; Reverend Phillip Harden, SWSP; Dr. Yussuf, Chaplain, SWSP; Al Solanik, Associate Administrator, SWSP; Sergeant Tambini, MSCF; Correctional Officer ("CO") Myers, MSCF; Nurse T. Robinson, MSCF; Kitchen Supervisor Myers, MSCF; Minister/Reverend Lopez, MSCF; ITI Cook Leonard, MSCF; Secretary Thurmond Miller, MSCF; and CO Hernandez, MSCF. Defendants are sued in their individual and official capacities.

### A.    Fourteenth Amendment Due Process Claims Against Christina Ahearn at MSCF

#### 1.    Factual Allegations

Plaintiff alleges the following facts in support of his due process claims against Christina Ahearn at MSCF.  After serving nineteen-and-a-half years in the custody of the New York Department of Corrections ("NYDOC"), Plaintiff was extradited to New Jersey in December 2019. Plaintiff received two misbehavior reports at SWSP in 2020. In September 2021, Plaintiff was housed at MSCF. Pursuant to a prison policy, after an inmate serves one year without any prison infractions, he may request, from the prison's classification department, the restoration of 25% of previously lost good conduct time. Christina Ahearn, head of MSCF's classification department, repeatedly denied Plaintiff's requests because the limitations period

associated with his request expired in 2003-2004. Plaintiff complained that N.J. Stat. § 30:4-140 does not explain how an inmate, who had been incarcerated in another state, could request restoration of lost good conduct time. He had no notice, from the year 2000 through December 2019, of how to make such a request. Ahearn informed Plaintiff that before she could grant his request, NYDOC would have to send a copy of his disciplinary history to show that he had no infractions from June 20, 2000 through June 20, 2002. (*See* Compl., Ex. A, Docket No. 1-3 at 5.) Plaintiff could not obtain these records. Without receiving this credit, he alleges that he was incarcerated beyond his anticipated release date, in violation of his substantive and procedural due process rights. For relief, he seeks money damages.

### 2.    Legal Standard:  42 U.S.C. § 1983 and Fourteenth Amendment Due Process Claims

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

For a claim of "deprivation of procedural due process rights," under the Fourteenth Amendment, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

> Prisoners typically have a protected liberty interest only in "freedom from restraint" that "imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). State regulations do not create a liberty interest unless they confer a right to freedom from restraint as described in *Sandin*. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997).

*Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 80 (3d Cir. 2014).

### 3. Analysis

In relevant part, N.J. Stat. § 30:4-140 (effective February 1, 2021), provides:

> Deductions for good behavior; calculation of time credits; effect on eligibility for parole
>
> For every year or fractional part of a year of a custodial sentence imposed upon any person there shall be remitted to the person from both the maximum and minimum term of the person's sentence, for continuous orderly deportment, the progressive time credits indicated in the schedule in this section. When a sentence contains a fractional part of a year in either the minimum or maximum thereof, then time credits in reduction of the fractional part of a year shall be calculated at the rate set out in the schedule for each full month of the fractional part of a year of sentence. In case of any flagrant misconduct the board of managers may declare a forfeiture of the time previously remitted, either in whole or in part, as they deem just.

This statute, cited by Plaintiff, does not govern the restoration of lost good conduct time when a prisoner is free of disciplinary violations for two years.  Plaintiff failed to identify the prison regulation governing his due process claims. Review of the regulation is necessary to determine whether the regulation confers a right to freedom from restraint.  *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935 (1974)  ("the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty'….")).  This Court is unable to determine whether the regulation(s), described but unidentified by Plaintiff, creates a liberty interest (a substantive due process right) that requires procedural due process protection. Therefore, this claim will be dismissed without prejudice. *See Iwanicki*, 582 F. App'x at 80–81 ("Because Iwanicki relies on unspecified 'administrative law' and prison policies, he has failed to meet the threshold requirement of alleging a protected liberty interest.")

### B.    Claims Against NJSPB and Executive Director Steven Tallard

#### 1.    Factual Allegations

In March 2000, Plaintiff was released from NJDOC on parole. Plaintiff reoffended three months later in New York. In October 2000, he pleaded guilty to a crime in the State of New York and received an 18-year prison term, with 85% parole ineligibility. That same month, Plaintiff's New Jersey parole officer requested

a final revocation hearing. Instead, on October, 27, 2000, New Jersey filed a parole warrant on Plaintiff with the NYDOC, based on the New York conviction. NJSPB never scheduled a final revocation hearing during the almost twenty years Plaintiff was incarcerated in New York, although a hearing could have been conducted by videoconferencing pursuant to N.J.A.C. 10A:71-7.13(b). NJSPB did not conduct a preliminary hearing, notify Plaintiff of his rights at a revocation hearing, establish probable cause of his parole violation, or conduct a hearing within 60 days of October 27, 2000.

Plaintiff was extradited to New Jersey State Prison in December 2019. On January 15, 2020, he was served with "parole hearing material." On January 31, 2020, Plaintiff had a final parole revocation hearing, and his parole was revoked. Plaintiff appealed. On May 27, 2020, NJSPB Executive Director Steven Tallard determined that Plaintiff should serve 2 years, 11 months and 6 days. Pursuant to a January 2022 executive order signed by Governor Phil Murphy, Plaintiff was released from NJDOC on March 10, 2022, after serving 27 months. Prior to his release, Plaintiff had appealed the NJSPB decision in the New Jersey Superior Court, Appellate Division, seeking immediate release based on alleged due process violations. The defendant in that suit argued that the appeal was moot because Plaintiff had been released. Plaintiff now seeks damages against NJSPB and Executive Director Steven Tallard for depriving Plaintiff of his substantive and procedural due process rights. He seeks money damages under § 1983.

### 2.    Immunity From Liability and Scope of Section 1983

"The Eleventh Amendment makes explicit reference to the States' immunity from suits 'commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Alden v. Maine*, 527 U.S. 706, 712–13, (1999) (quoting U.S. Const., Amdt. 11.)) Congress, in enacting § 1983, did not intend to create "a federal forum for civil rights claims against States" by overriding sovereign immunity of the States. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). New Jersey did not waive its sovereign immunity with respect to § 1983 claims in federal courts. *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (citation omitted).

"Sovereign immunity extends to state agencies and state officers, 'as long as the state is the real party in interest.'" *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 857 (3d Cir. 2014) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Moreover, § 1983 imposes liability against "persons[,]" and state agencies are not persons within the meaning of the statute. *Est. of Lagano*, 769 F.3d at 854 (quoting *Will*, 491 U.S. at 71)).

### 3.    The New Jersey State Parole Board and Steven Tallard in his Official Capacity are Immune Under § 1983

The New Jersey State Parole Board is not a "person" who is subject to suit under § 1983.  *Madden v. New Jersey State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971); *Thrower v. The New Jersey State Parole Bd.*, 438 F. App'x. 71, 72 (3d Cir. 2011) (affirming dismissal of § 1983 claims against New Jersey State Parole Board). Moreover, the New Jersey State Parole Board was established within the New Jersey Department of Corrections, *see* N.J. Stat. § 30:4-123.47(a); and the NJDOC is a state agency entitled to Eleventh Amendment immunity. *Fox v. Bayside State Prison*, 726 F. App'x 865, 867 (3d Cir. 2018) (finding NJDOC "is quintessentially an arm of the state.") Executive Director Steven Tallard, in his official capacity, is immune from suit for damages under § 1983.  Indeed, all defendants named in the complaint are state officials or employees who are immune from suit for damages under § 1983 in their official capacities. Accordingly, the § 1983 claims for money damages against NJSPB and all defendants in their official capacities, will be dismissed with prejudice.

### 4.    Fourteenth Amendment Due Process Claims Against Executive Director Steven Tallard in his Individual Capacity

Plaintiff seeks to hold Executive Director Steven Tallard liable in his individual capacity for due process violations with respect to NJSPB's 2020 decision to revoke his parole.  In March 2022, Plaintiff was released from custody before the New Jersey Superior Court, Appellate Division ruled on his due process challenges

to his parole revocation. His state habeas petition was dismissed as moot. He now seeks damages under § 1983.

"In *Heck*, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Williams v. Consovoy*, 453 F.3d 173, 176 (3d Cir. 2006) (citing *Heck v. Humprhey*, 512 U.S. 477). The *Heck* rule is applicable where success on a § 1983 action would necessarily demonstrate the invalidity of a parole board's decision to revoke parole. *Id.* at 177. A challenge to the timeliness of a parole revocation hearing in a § 1983 action is *Heck*-barred if the untimeliness deprived the Board of legal authority to revoke parole. *Butler v. Pennsylvania Bd. of Prob. & Parole*, 613 F. App'x 119, 121–25 (3d Cir. 2015). The *Heck*-bar remains in force even if habeas relief is no longer available to the plaintiff. *Williams*, 453 F.3d at 177.

Plaintiff alleges that his 2020 parole revocation is invalid because it was untimely, and seeks damages for time served on the parole violation. Such a claim is *Heck*-barred because, according to the complaint, Plaintiff's habeas appeal of his parole revocation was dismissed as moot. Therefore, his parole revocation was not invalidated, a prerequisite to a § 1983 suit for damages.

Even if his claim was not *Heck*-barred, Plaintiff's claim is meritless because "the loss of liberty as a parole violator does not occur until the parolee is taken into

10

custody under the warrant." *U.S. ex rel. Caruso v. U.S. Bd. of Parole*, 570 F.2d 1150, 1154 (3d Cir. 1978) (quoting *Morrissey v. Brewer,* 429 U.S. at 86-87.)  Plaintiff alleges he was taken into custody on the parole warrant in December 2019, and his parole revocation hearing was held within sixty days, on January 31, 2020. Thus, Plaintiff did not suffer a loss of liberty as a parole violator before he was taken into custody on the parole warrant in December 2019.  *Moody v. Daggett*, 429 U.S. 78, 89 (1976) (holding there is "no constitutional duty to provide [a] petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant.") Therefore, in the alternative to dismissing the claim without prejudice as *Heck*-barred, the Court will dismiss this claim with prejudice on the merits.

Plaintiff also alleges deprivation of his procedural due process rights to a preliminary parole revocation hearing, timely notification of his rights at a revocation hearing, and the requirement of probable cause to establish a parole violation.  When a plaintiff raises procedural due process claims that would not necessarily invalidate his parole revocation, a showing of prejudice is essential to state a claim. *Butler*, 613 F. App'x at 124 (citing e.g., *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d Cir.1987) ("[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim") (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). There is no prejudice when "[a] criminal conviction conclusively establishes a parole violation, and a parolee cannot 'relitigate' these matters at his revocation hearing." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 490 (1992)). Based on the allegations in the complaint, Plaintiff's 2000 criminal conviction in

New York conclusively established his New Jersey parole violation. *Butler*, 613 F.

App'x at 124 (citing *Lovasco*, 431 U.S. at 790); *Razzoli v. U.S. Navy*, 248 F. App'x 473,

475 (3d Cir. 2007) (same). Therefore, the Court will dismiss with prejudice the

Fourteenth Amendment due process claims against Executive Director Steven

Tallard in his individual capacity.

### C.   Claims Against Reverend Harden, Dr. Yussuf, and Associate Administrator Al Solanik at SWSP

#### 1.   Factual Allegations

Plaintiff, a practicing Muslim, arrived at SWSP on January 2, 2020. He

immediately requested to be placed on lists to attend all Islamic classes and Friday

congregational prayers. Plaintiff told Dr. Yussuf, the Muslim Chaplain, that he had

to attend all Islamic classes to learn the basic tenets of his religion. Plaintiff's requests

to attend the classes were ignored, and in April 2020, the pandemic hit. Although

Plaintiff had been placed on the class and prayer lists at that time, it was too late,

everything was cancelled. Before the pandemic struck, Plaintiff did not have access

to any Islamic texts as an alternative method for study.

Additionally, in May 2020, Plaintiff was not timely provided with Ramadan

festive meals, which Dr. Yussuf was in charge of providing. Plaintiff filed a

grievance, which caused Dr. Harden, Dr. Yussuf's supervisor, to set up a meeting.

On the way to the meeting with Dr. Yussuf, Reverend Harden threatened Plaintiff

that prisoners who write grievances "don't last long." Dr. Yussuf then told Plaintiff

that he did not have any rights in jail, and that he didn't like Plaintiff's grievances.

Plaintiff left, and Dr. Yussuf followed, screaming at him. Dr. Yussuf told an officer to call a sergeant, and then he told the sergeant that Plaintiff had threatened him. Plaintiff was taken to the Special Housing Unit ("SHU"). Dr. Yussuf falsified an incident report that Plaintiff had threatened him, and Dr. Harden co-signed it.

Also at SWSP, from January 2020 to July 2020, the institution provided only Christian television programs. Plaintiff complained that Muslims did not have access to religious television programs during the pandemic. Associate Administrator Al Solanik was in charge of what was played on the institution television, and he refused to allow each religious group to have religious programs, in violation of Plaintiff's right to free exercise of religion.

### 2.    First Amendment Free Exercise of Religion Claims

"The Free Exercise Clause of the First Amendment provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....'" U.S. Const. amend. I. *Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003), *as amended* (May 29, 2003). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted)). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51-52 (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir.1981)). Assuming a sincerely held religious belief is established, "a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or

with the legitimate penological objectives of the corrections system.'" *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974)).

The test announced in *Turner v. Safley* applies to an inmate's free exercise of religion claim. *Dehart*, 227 F.3d at 51.  Thus, "'[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)).  "[U]nder the *Turner* framework, four factors must be considered in assessing the reasonableness of such regulations." *Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002).  Those factors are (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;] (2) whether "there are alternative means of exercising the right that remain open to prison inmates[;] (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[;]" and (4) the existence or absence "of ready alternatives…." *Id.* at 89-90.

### 3.    Analysis

Plaintiff's First Amendment free exercise of religion claim against Dr. Yussuf may proceed.  These claims are ultimately subject to consideration of the *Turner* factors, when more information is available concerning any governmental interest that may justify the defendants' actions. Plaintiff, however, has not alleged sufficient facts concerning Reverend Harden's personal involvement in failing to put Plaintiff

on the attendance lists for Islamic classes and Friday congregational prayers and for not timely providing festive religious meals. *See Iqbal*, 556 U.S. at 676 (holding there is no vicarious liability under § 1983). Therefore, Plaintiff failed to state a claim of supervisory liability against Reverend Harden, as Dr. Yussuf's supervisor. *See Santiago v. Warminster*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (defining the two theories of supervisory liability under § 1983, knowledge and acquiescence and policy, practice or custom) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Plaintiff's First Amendment free exercise claim against Associate Administrator Solanik lacks sufficient factual allegations for this Court to conclude that the lack of Islamic television programs burdened Plaintiff's right to free exercise of religion. Plaintiff has not alleged that access to Islamic television programs was required to practice a tenet of his religion. Even if Plaintiff intended to raise this claim under the Equal Protection Clause of the Fourteenth Amendment, he failed to allege his request for Islamic television programs, comparable to Christian television programs that were available, was denied based on intentional discrimination. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 118 (3d Cir. 2017) (citing *Washington v. Davis*, 426 U.S. 229, 240 (1976) (intentional discrimination is an element of a Fourteenth Amendment Equal Protection claim)). If Plaintiff wishes to assert an Equal Protection claim, he may include it in an amended complaint.

### 4.     First Amendment Retaliation Claims

The elements of a retaliation claim for engaging in constitutionally protected conduct are "that: (1) [the plaintiff's] conduct was constitutionally protected; (2) [the plaintiff] suffered an adverse action at the hands of prison officials; and (3) [the plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2000)).  A plaintiff can satisfy the third element "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (citation omitted).

Plaintiff's First Amendment retaliation claims may proceed against Dr. Yussuf and Reverend Hardin for allegedly falsifying an incident report against Plaintiff in retaliation against him for filing grievances concerning festive religious meals in May 2020.

### D.     First and Fourteenth Amendment Discrimination Claims Against Sergeant Tambini and CO Myers at MSCF

### 1.     Factual Allegations

Pursuant to a prison practice by housing unit staff, Plaintiff had "seniority" for a "nonhighway" bunk in his housing facility at MSCF in July 2021.  When the inmates were transferred to a new housing unit, Sergeant Tambini and CO Myers

16

said that Inmates Arroyo and Rodriguez would be assigned the "non-highway beds" based on their Hispanic nationality, because inmates do not like to have Muslims in the area praying all day.  Plaintiff alleges that CO Myers and Sergeant Tambini discriminated against him based on his Non-Hispanic race and Islamic religion, in violation of his rights under the First and Fourteenth Amendments.

### 2.    Fourteenth Amendment Equal Protection Claims

"The Equal Protection Clause of the Fourteenth Amendment to our Constitution provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (quoting U.S. Const. Amend. XIV, § 1.) "To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The plaintiff must also allege intentional discrimination. *Robinson*, 693 F. App'x at 118. "[I]ntentional discrimination based on religious affiliation must survive heightened equal-protection review." *Hassan,* 804 F.3d at 301. To state a claim, the plaintiff's "religious affiliation must have been a substantial factor in that different treatment." *Id.* at 294 (citing *Washington*, 426 U.S. at 235; *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979)).  The Third Circuit has not determined whether heightened review of such claims involves strict scrutiny or an intermediate level of review. *Id.* at 301. Thus, at a minimum, more than a rational

basis is required to permit intentional discrimination based on religion.  Strict

scrutiny applies to race-based discrimination claims. *Adarand Constructors, Inc. v. Pena*,

515 U.S. 200, 227 (1995). Plaintiff's Fourteenth Amendment equal protection claims

against Sergeant Tambini and CO Myers may proceed.

### E.    Eighth Amendment Inadequate Medical Care Claim Against Nurse T. Robinson at MSCF

On October 21, 2021, Nurse Robinson did not give Plaintiff Suboxone as

prescribed, because he arrived too late for the pill line.  Plaintiff was late because he

was following the instructions of his housing unit officer. As a result of not getting

Suboxone that day, Plaintiff suffered headache, stomach ache, cramps and diarrhea.

He alleges Nurse T. Robinson's conduct violated the Eighth Amendment.

Deliberate indifference to a prisoner's serious medical need violates the Eighth

Amendment where:

> (1) prison authorities deny reasonable requests for medical
> treatment, (2) knowledge of the need for medical care is
> accompanied by the intentional refusal to provide it, (3)
> necessary medical treatment is delayed for non-medical
> reasons, and (4) prison authorities prevent an inmate from
> receiving recommended treatment for serious medical
> needs. [*Monmouth County Correctional Institutional Inmates
> v.*] *Lanzaro*, 834 F.2d [326,] 347 [3d Cir. 1987].

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017).

Plaintiff has not alleged that Nurse Robinson was aware that missing a single

dose of Suboxone could result in Plaintiff suffering pain or deterioration of his

health.  Given that Plaintiff missed his medical appointment, Nurse Robinson was

not deliberately indifferent unless she was aware her failure to accommodate Plaintiff

was likely to result in his pain or illness, or if she refused to treat Plaintiff after he reported suffering from headache, stomachache, cramps and diarrhea. Therefore, this claim will be dismissed without prejudice.

### F. First Amendment Free Exercise of Religion Claim Against Secretary Thurman Miller at MSCF

On October 3, 2021, Plaintiff filed a request to use areas outside his housing unit for Muslim prayer, and he alleges this would not have disrupted administration of the prison or posed any security concern. Secretary Miller received and then closed Plaintiff's request without doing anything or providing any reason.  Plaintiff alleges that Secretary Miller violated his First Amendment right to free exercise of religion. This claim will be dismissed without prejudice because Plaintiff has not alleged that his inability to pray outside his housing unit impinged on his free exercise of religion. *DeHart*, 227 F.3d at 51 (noting "the *Turner* analysis is appropriate only in cases where a prison policy is impinging on inmates' constitutional rights.")

### G. Claims Against Kitchen Supervisor Myers, Reverend/Minister Lopez, ITI Cook Leonard and CO Hernandez at MSCF

#### 1. Free Exercise of Religion Claim Against Myers and Lopez

There was a Muslim holiday on July 20, 2021, which required Muslims to engage in a festive meal. Myers, who is in charge of MSCF's kitchen, and Lopez, who is in charge of all religious activity in the prison, delayed service of festive meals to all Muslim until July 28, 2021, for non-security reasons. On July 28, 2021, Plaintiff was told the religious meal would be delayed again until August 4, 2021,

because the kitchen had to cook for Officers Appreciation Day. Plaintiff filed
grievances about this incident. Plaintiff's First Amendment free exercise of religion
claim may proceed against Myers and Lopez, although the claim is ultimately
subject to consideration of the *Turner* factors.

### 2.   First Amendment Retaliation Claims

Plaintiff worked in the kitchen under the supervision of Myers and Leonard.
After Myers responded to Plaintiffs' complaint about late service of his festive meal,
Myers and others began making derogatory comments about Plaintiff filing
grievances.  While working in the kitchen on November 27, 2021, Leonard said that
all black people steal, which caused Plaintiff to file a complaint. Two days later,
Myers told Plaintiff that he and Leonard filed a job removal request against Plaintiff
for filing so many complaints. Plaintiff reported this to CO Hernandez, who told
Plaintiff she would not go against her coworkers.  On December 8, 2021, Plaintiff
went before the classification committee on the job removal request. He was
removed from his kitchen job because Myers does not tolerate complaints.

Plaintiff's First Amendment retaliation claims may proceed against Myers and
Leonard.  Plaintiff has failed to allege sufficient facts to establish Hernandez took an
adverse action against Plaintiff for filing complaints, and this claim will be dismissed
without prejudice.

## III.   JOINDER OF DEFENDANTS

The complaint contains many unrelated allegations against multiple
defendants. "Misjoinder of parties is not a ground for dismissing an action. On

motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.  For the reasons discussed below, this Court will sever Plaintiff's claims against improperly joined parties.

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party." In a multi-defendant case, however, Rule 20 limits joinder of defendants. Federal Rule of Civil Procedure 20(a)(2) provides:

> Persons ... may be joined in one action as defendants if:
>
> (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrences; and
>
> (B) Any question of law or fact common to all defendants will arise in the action.

Rule 20 must be liberally construed.  *Salley v. Sec'y Pennsylvania Dep't of Corr.*, 565 F. App'x 77, 82 (3d Cir. 2014)  (noting district court recognized need to liberally construe Rule 20.)

Plaintiff has mis-joined unrelated defendants under the standard announced in Rule 20, and this Court will sever his claims into multiple civil actions. The present civil action, No. 22-3812, will be reserved for Plaintiff's due process claims against Christina Ahearn, which will be dismissed without prejudice. The Court will sever Plaintiff's claims, as follows, into four new civil actions. Plaintiff may join his claims against 1) NJSPB and Executive Director Steven Tallard; 2) Reverend Harden, Dr.

Yussuf, and Associate Administrator Al Solanik at SWSP; 3) Nurse T. Robinson at MSCF; and 4)  Sergeant Tambini, CO Myers, Secretary Thurman Miller, Kitchen Supervisor Myers, Reverend/Minister Lopez, ITI Cook Leonard, and CO Hernandez at MSCF.

Because Plaintiff has demonstrated his financial eligibility to proceed *in forma pauperis* as a non-prisoner, and he is not required to pay a filing fee, he will be granted *in forma pauperis* status in each action, and he and may proceed with any claims that have not been dismissed. For any claims dismissed without prejudice, Plaintiff is granted leave to file an amended complaint, in the appropriate case, if he can cure the deficiencies in his claims by alleging additional facts.

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's IFP application, sever improperly joined defendants into multiple civil actions, and proceed in part and dismiss in part Plaintiff's claims.

An appropriate Order follows.

**DATE:**  January 25, 2023              s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          United States District Judge